1  HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAP KRAY,

                Petitioner,

       v.

BELINDA STEWART, *et al.,*

                Respondent.

Case No. C06-5521RBL

ORDER

THIS MATTER comes on before the above-entitled Court upon Petitioner's Objections [Dkt. #37] to the Report and Recommendation of Magistrate Judge Karen L. Strombom [Dkt. #34]. Having considered the entirety of the records and file herein, the Court will address each of petitioner's objections *seriatim*:[1]

## I. INTRODUCTION

This habeas petition arises from the conviction of Sap Kray for the murder of Tacoma Police Officer William Lowry. Kray's defense at trial was self-defense. The trial court gave the following instruction on the law of self-defense:

> It is a defense to a charge of murder that the homicide was justifiable as defined in this instruction.
>
> Homicide is justifiable when committed in the lawful defense of the

---

[1] The Court has reviewed petitioner's previous submissions [Dkt.#s 1, 19, 20, 23 and 27]; therefore, the Court does not require further briefing supplementing petitioner's objections to the Report and Recommendation.

ORDER
Page - 1

slayer when:

> (1) the slayer reasonably believed that the person slain intended to inflict death or great personal injury;
>
> (2) the slayer reasonably believed that there was imminent danger of such harm being accomplished; and
>
> (3) the slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him, at the time of and prior to the incident.
>
> The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable. If you find the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

Over Kray's objection, the trial court also gave the following, so-called "initial aggressor" instruction:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon kill, use, offer or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the conflict, then self-defense is not available as a defense.

On appeal, Kray argued that the giving of this instruction was error. In affirming his conviction the Court of Appeals, Div. II, declined to substantively address this argument, and instead held: "Any errors pertaining to the self-defense instructions here were harmless because under the circumstances of this case, Kray was not entitled to a self-defense instruction. Kray's own actions necessitated the Tacoma SWAT team's attempted entry of Srip's home. . . ." *State v. Kray*, 2002 WL 31732682, at *5 (Wash. App. Div. II) (unpublished opinion). The court further held "the police used force that, while deadly, was lawful and not excessive under the circumstances." *Id*. at *6. Kray then filed a personal restraint petition alleging that his constitutional rights were violated when the court adopted a new legal theory on the law of self-defense. This new theory, according to Kray, is that in order to be entitled to a self-defense instruction, he must show that the police officer's use of force was excessive. The Court of Appeals, Div. II, rejected that argument and found that Kray suffered no actual or substantial prejudice because the instructions he received at trial were more lenient than he was entitled to receive.

These decisions form the basis for Kray's first four claims in the habeas petition before this Court. Kray's position is that by finding that the force used was not excessive, and that Kray created the need for

1  the police to use deadly force, the Court of Appeals violated several of his constitutional rights. He also
2  claims that his constitutional rights were violated when evidence of the Critical Incident Stress Debriefings
3  was excluded, when testimonial hearsay was admitted, and when tapes were replayed to the jury during
4  deliberations and outside of his presence. For the reasons stated in Magistrate Judge Strombom's Report
5  and in this Order, the Court finds that Petitioner's positions are not well taken. Kray's conviction was
6  obtained and affirmed in accordance with the United States Constitution.

## II. **STANDARD FOR RELIEF UNDER AEDPA**

In *Gautt v. Lewis*, 489 F.3d 993 (9th Cir. 2007), the Court set forth the rules for granting a writ of habeas corpus subsequent to the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

> Under AEDPA, a petition for a writ of habeas corpus cannot be granted as to an issue that the state court decided on the merits, unless
>
> The adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> 28 U.S.C. §2254(d). For purposes of this statute, "clearly established Federal law" refers to "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade,* 538 U.S. 63, 71-72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).
>
> A state court decision is "contrary to" such law if it (1) "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or (2) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision is "an unreasonable application of" such law if "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. at 407, 120 S.Ct. 1495. The petition must establish that the state court's application of governing law was not only erroneous, but also "objectively unreasonable." *See Andrade*, 538 U.S. at 75, 123 S.Ct. 1166; *Williams*, 529 U.S. at 409-10, 120 S.Ct. 1495.

*Gautt*, 489 F.3d at 1001.

## III. **PETITIONER'S OBJECTIONS TO THE REPORT AND RECOMMENDATION**

1. <u>Petitioner's Objection to the Recommendation that the Petitioner be Dismissed</u>.

Petitioner objects to the conclusion by Judge Strombom that the petition should be dismissed. For the reasons stated as to each specific objection made, this objection is not well taken.

2. <u>Petitioner's Objection to the Standard Used for Factual Findings</u>.

Petitioner objects to the Report's use of the standard of review found in 28 U.S.C. §2254(e)(1) that state court factual findings are presumed correct unless rebutted by clear and convincing evidence. Rather, petitioner argues that the Court should apply the usual rules of summary judgment which require this Court to assume petitioner's facts to be true in the absence of conclusive contrary evidence or state court findings. Petitioner argues that because the state did not contradict those "facts" recited in his petition and in the state court post-conviction record that were based on sworn declarations of what the defense would have done had the circumstances at trial been different, such "facts" should be taken as true.

Judge Strombom recommends that the Court is not required to accept these "facts" as true because the cases relied on by Petitioner[2] merely stand for the proposition "that the Court may adopt factual allegations not disputed by the Respondent when they are not inconsistent with the record." (R&R p. 2, n. 2) This Court finds that Judge Strombom's analysis of the law on this point is correct and the objection is not well taken.

3. <u>Petitioner's Objection to the Statement of Facts</u>.

<u>See</u> paragraph 5 below.

4. <u>Petitioner's Objection to the Identification of Claims</u>.

<u>See</u> paragraph 8 below.

5. <u>Petitioner's Objection to the Recommendation that an Evidentiary Hearing is Not Required</u>.

Petitioner objects to the recommendation that an evidentiary hearing is not necessary and to the Report's reliance on the statement of facts as set forth in the Washington State Court of Appeals' unpublished opinion. Petitioner argues that he requested evidentiary hearings in the Washington state courts and was refused; therefore, he did not fail to develop the record below, and is thus entitled to an

---

[2] *Bland v. California Dept. of Corrections*, 20 F.3d 1469 (9th Cir. 1994) and *Dickens v. Jones*, 203 F. Supp. 2d 354 (E.D. Mich. 2002).

evidentiary hearing before this Court. He argues that he is entitled to an evidentiary hearing to establish that his trial lawyers "would have presented evidence at trial that the force used against him was excessive" and that they were entitled "to learn what occurred during the peer-support group meetings." (Pet. Obj., p. 3-4)

As will be set forth more fully below, evidence of what his trial lawyers would have done differently is not necessary to decide a pure issue of law. Furthermore, the error, if any, of excluding testimony of the peer-support group sessions was not in violation of clearly established federal law. Therefore, the objection is not well taken.

6. <u>Petitioner's Objection to the Report's Statement of Governing Law</u>.

Petitioner objects to the Report's general statement that "Supreme Court holdings at the time of the state court decision will provide the 'definitive source of clearly established federal law[]'" (internal citations omitted). (R&R, p. 9) Petitioner argues that "[t]he governing law includes Supreme Court decisions issued after the state court opinion and before the case becomes final by disposition or *certiorari*[]," citing *Stringer v. Black*, 503 U.S. 222, 226 (1992). Petitioner is incorrect. According to the most recent pronouncements of the Supreme Court on the subject, ". . . 'clearly established Federal law' under §2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court <u>at the time the state court renders its decision</u>." *Lockyer v. Andrade*, 538 U.S. 362, 405 (2000) (emphasis added). The objection is not well taken.

7. <u>Petitioner Does Not Object to the Recommendation that All His Claims Have Been Exhausted</u>.

Petitioner agrees with the Report's conclusion that he has exhausted all claims, including Claim Four.

8. <u>Petitioner's Objection to the Report's Combining Claims One and Three and the Recommendation that the Instructional Error was Harmless</u>.

Petitioner objects to the analysis undertaken in the Report, which combines the denial of a right to a jury trial on the factual elements of aggravated first degree murder and self-defense as set forth in Claim One with the lack of trial notice as set forth in Claim Three. He argues that the Report "fails to grasp the basic Sixth Amendment issue." Petitioner argues that his claim is not that the trial court gave erroneous instructions on the law of self-defense, but that the constitutional issue is the failure to submit to the jury an element of the charge of aggravated murder – the absence of self-defense. In Washington, "[o]nce the

issue of self-defense is properly raised . . . the absence of self-defense becomes another element which the state must prove beyond a reasonable doubt." *State v. McCullum*, 656 P.2d 1064, 1070 (Wash. 1983).

Self-defense was never "properly raised" by Kray, thus the instruction error, if any, was harmless. The Court of Appeals explained that "[b]ecause, under [the factual] circumstances [of this case] Kray had no right to act in self-defense, he was not entitled to any self-defense instructions at trial." *Kray*, 2002 WL 31732682, at *9. The giving of the self-defense instructions thus did not result in the failure to submit to the jury an element of the crime. Rather, the instructions as a whole added an element - the absence of self-defense - that the state had to prove in order to convict the Petitioner. The error is correctly analyzed as a jury instruction error subject to harmless error analysis. The Report did not err in concurring with the Court of Appeals' conclusion that the error was harmless. The objection is not well taken.

9. <u>Petitioner's Objection to the Report's Combining Claims Two and Four and the Analysis of the Due Process/Ex Post Facto Claim as a Trial-Type Constitutional Error.</u>

Petitioner objects to the analysis undertaken by the Report which combines the Due Process/Ex Post Facto violation (as set forth in Claim Two) with the excessive force/Fourth Amendment violation (as set forth in Claim Four). Petitioner argues his Ex Post Facto claim is separate and apart from the Fourth Amendment claim. The basis for this claim is that the Court of Appeals made factual findings (an argument made by Petitioner in Claims One through Four) that the force used by Officer Lowry was not excessive and that Petitioner "created the need" for the police to shoot him. He claims the Court of Appeals made this finding and established new law after the fact thereby denying Petitioner's due process right to notice of what the law was at the time of the crime.

In *Bouie v. City of Columbia*, 378 U.S. 347 (1964) the Supreme Court held that due process prohibited retroactive application of a judicial construction of a criminal statute that was "'unexpected and indefensible by reference to the law which has been expressed prior to the conduct at issue.'" *Id*., at 354 (quoting <u>Hall, General Principles of Criminal Law</u>, (2d. ed. 1960) at 61). In *Rogers v. Tennessee*, 532 U.S. 451 (2001), the Court explained that *Bouie's* "rationale rested on core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *Id*., at 459. To violate due process under *Bouie*, "the construction given the statute by the state court must have been a 'radical and unforseen departure from prior law.'" *Hayes v. Woodford*, 301 F.3d 1054, 1088 (9th Cir. 2002) (quoting

*United States v. Walsh*, 770 F.2d 1490, 1492 (9th Cir. 1985)). The limitations placed on judicial decision-making by due process concerns should not "place unworkable and unacceptable restraints on normal judicial process" particularly where "[i]n the context of common law doctrines . . . there often arises a need to re-evaluate prior opinions as new circumstances and fact patterns present themselves." *Rogers*, 532 U.S., at 461.

The Court of Appeals' decision is not a "radical and unforeseen departure" from prior law. Rather, it is directly in-line with both the caselaw and common sense. Previous Washington law had held that a police officer may use reasonable force to detain an offender and overcome resistance. *State v. Drew*, 175 Wash. 11, 18 (1933). And, when faced with excessive force by a known police officer, a defendant must still show that he was about to be seriously injured to be justified in his resistance. *State v. Westlund,* 13 Wash. App. 460, 466 (1975). In light of these holdings, this Court fails to see how the Court of Appeals' decision, even if a slightly different articulation, is a "radical and unforeseen" departure. The objection is not well taken.

    10.   <u>Petitioner's Objection to the Recommendation that He is Not Entitled to Relief on His Third Claim: Lack of Trial Notice</u>.

Petitioner objects to the analysis undertaken by the Report which combines Claim One (<u>see</u> #8, above) and Claim Three. He characterizes this claim as a due process claim of "the right to notice of the law being applied and the issues at trial." (<u>See</u> Traverse, p. 14, Dkt. #20.) The Report recommends that this claim does not merit relief because under the dictates of *Presnell v. Georgia*, 439 U.S. 14 (1978) and *Cole v. Arkansas*, 333 U.S. 196 (1948), the due process error, if any, did not actually prejudice the petitioner. In *Cole*, the Supreme Court held that "[t]o conform to due process of law, petitioners were entitled to have the validity of their convictions appraised on consideration of the case as it was tried and as the issues were determined in the trial court." *Id*., at 202. The defendants in Cole were convicted at trial of one offense, but the Arkansas Supreme Court affirmed the convictions on the basis of a separate offense and upon which the jury was not instructed.

Petitioner argues that had he been aware of the law on self-defense as the Court of Appeals applied it in his case, he would have put on different evidence. The Report, and the state court, concluded that because the self-defense instructions that were erroneously given were more favorable to the defendant than he was entitled to, any error was harmless beyond a reasonable doubt (direct appeal), nor did it cause him actual prejudice (PRP). In order to find a due process violation, Petitioner must show actual prejudice, that is, that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The evidence in this case established that Petitioner had threatened his ex-wife with a weapon earlier at her home and at Emerald Downs, displayed a weapon to Auburn police, refused to cooperate with Tacoma police while at Srip's Tacoma home, and that the police had information Petitioner had an assault rifle inside the house. Given this evidence, the lack of the other evidence did not have a "substantial and injurious effect or influence in determining the jury's verdict." For this reason, and the reasons stated by Judge Strombom, this objection is not well taken.

11. <u>Petitioner's Objection to the Report Because it Does Not Directly Address His Fourth Amendment/Excessive Force Claim</u>.

Petitioner objects to the Report's analysis of his Fourth Amendment/Excessive Force claim as set forth in Claim Four with his Ex Post Facto claim as set forth in Claim Two. He argues that the state appellate courts erred when they determined that the force used against him was not excessive, and that the Report also errs by failing to determine whether the state court's decision was an unreasonable application of the law to the facts of this case.

Petitioner focuses on the SWAT team's use of the ARWEN®[3] for his claim that the force used was excessive.[4] Petitioner relies on authority holding that shooting an unarmed, unthreatening person with a potentially lethal weapon at close range is excessive force. *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001). In *Deorle*, the plaintiff was shot with a cloth-cased lead-filled round by Officer Rutherford. He sued under 42 U.S.C. §1983 alleging excessive force. The district court granted defendant summary

---

[3]An ARWEN® is a blunt-trauma gun that fires high-powered rubber bullets. It is intended to incapacitate a subject long enough to allow the police to take him into custody. Used properly, it is non-lethal. *See Kray*, 2002 WL 31732682*3, fn. 7.

[4]The Court of Appeals focused on whether the <u>shooting</u> of Petitioner amounted to excessive force:
> Under these circumstances, where officer and suspect are facing each other with firearms, the officer is not required to wait for the suspect to fire first, further imperiling the officer. Accordingly, we conclude that the SWAT team did not use excessive force by shooting at Kray, regardless of who fired first.

*Kray*, 2002 WL 31732682*7.

ORDER
Page - 8

judgment holding that the force used was not excessive and that Rutherford was entitled to qualified immunity. In reversing, the Ninth Circuit focused on the facts:

> Here, given all the circumstances–the large number of police officers present, the pending arrival of the negotiators "essential to resolve [such] critical incidents"; the nature of Doerle's conduct (essentially disturbing the peace); Deorle's compliance with the prior commands of the officers; the absence of any physical assault; Deorle's having discarded the crossbow when told to do so and being unarmed at the time he was fired upon–the fact that Deorle was walking on his own property in Rutherford's direction with a can or bottle in his hand is insufficient by any objective measure to justify the force deployed.

272 F.3d, at 1282. The Court went on to hold that "[t]he degree of force was plainly in excess of the governmental interest at stake."[5] *Id.*, at 1284.

In *Tennessee v. Garner*, 471 U.S. 1 (1985), the Supreme Court declared unconstitutional a Tennessee statute to the extent it authorized the use of deadly force against an unarmed fleeing suspect without regard to whether or not he presents a danger to himself or others. The Supreme Court recounted the facts:

> At about 10:45 p.m. on October 3, 1974, Memphis Police Officers Elton Hymon and Leslie Wright were dispatched to answer a "prowler inside call." Upon arriving at the scene they saw a woman standing on her porch and gesturing toward the adjacent house. She told them she had heard glass breaking and that "they" or "someone" was breaking in next door. While Wright radioed the dispatcher to say that they were on the scene, Hymon went behind the house. He heard a door slam and saw someone run across the backyard. The fleeing suspect, . . . Edward Garner, stopped at a 6-feet-high chain link fence at the edge of the yard. With the aid of a flashlight, Hymon was able to see Garner's face and hands. He saw no sign of a weapon, and, though not certain, was "reasonably sure" and "figured" that Garner was unarmed. He thought Garner was 17 or 18 years old and about 5'5 or 5'7 tall. While Garner was crouched at the base of the fence, Hymon called out "police, halt" and took a few steps toward him. Garner then began to climb over the fence. Convinced that if Garner made it over the fence he would elude capture, Hymon shot him. The bullet hit Garner in the back of the head. Garner was taken by ambulance to a hospital, where he died on the operating table. Ten dollars and purse taken from the house were found on his body.

471 U.S., at 3-4 (footnotes and internal citations omitted.) The decedent's father brought an action under 42 U.S.C. §1983 alleging violations of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments. The

---

[5] In analyzing a qualified immunity defense, the court must consider whether the degree of force used was warranted by the governmental interests at stake. The governmental interests at stake were minimal. "In sum, the crime being committed, if any, was minor and the danger to Rutherford and others appears to have been minimal, or was the risk of flight." *Deorle*, 272 F.3d at 1282.

ORDER
Page - 9

district court dismissed finding that the Tennessee statute authorized the shooting and was constitutional. After an interim remand, the Sixth Circuit reversed and held that the facts did not justify the use of deadly force under the Fourth Amendment, and that officers may not resort to deadly force unless they have probable cause to believe the suspect has committed a felony and poses a threat to the officers or the community. *Id.*, at 5-6. The Supreme Court affirmed.

The facts in Kray differ significantly. Although he may have been unarmed when shot with the ARWEN®, the police had reason to believe he had a loaded weapon in his house. He had previously threatened his ex-wife with a weapon, displayed the weapon to Auburn police, and refused to cooperate with the Tacoma police. On these facts, the Court cannot say that the state court's decision was "contrary to, or involved an unreasonable application of clearly established Federal law" or was "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. §2254(d)(1), (2). The recommendation to deny relief in Claim Four is well taken.

    12.    <u>Petitioner's Objection to the Recommendation that the Exclusion of the CISD Evidence Did Not Violate the Confrontation Clause</u>.

Petitioner objects to the Report's analysis of the exclusion of evidence of the CISD (Critical Inadent Stress Debriefings). Petitioner claims that the exclusion of this evidence violated the Confrontation Clause and should be analyzed under more stringent standards. The Report first concluded that it need not review the sealed transcripts of the ex-parte hearings conducted by the trial court in determining whether to exclude the evidence based on the peer support group privilege, and analyzed the claim as merely an evidentiary issue. The Report recommends that habeas relief be denied because the exclusion of the evidence did not violate Due Process. Even if analyzed as a violation of the Confrontation Clause, habeas relief is not warranted if the Court is convinced beyond a reasonable doubt that the error was harmless. *Delaware v. Van Arsdale*, 475 U.S. 673, 684 (1986).

Petitioner's trial counsel effectively cross-examined the officers without benefit of the CISD evidence and brought out the inconsistencies in their statements as to who fired the first shot and how many shots Petitioner fired. The defense thoroughly discredited the state's theory that Kray fired first. SWAT Officers Wolf, Roberts, Still, Kelstrup and Habib, either originally stated in their reports or testified on direct that they heard a loud boom from an assault rifle first (presumably Kray's) followed by several shots that were not as loud (presumably from SWAT weapons). On cross-examination, Kray's counsel

quite ably impeached them with their prior inconsistent statements about who fired the first shot and how many shots were fired. For example, Habib admitted on cross that he learned after the incident and after his first report was submitted that the sequence of shots he first reported was erroneous. He also admitted that he was made aware that Kray fired only one round. Furthermore, the jury had uncontroverted forensic evidence that Petitioner fired only one shot, and that shot killed Officer Lowry. Even if "the damaging potential of the cross-examination was fully realized," *Id*., the CISD evidence would not have materially added to the impact on the jury of the inconsistencies. The error was harmless beyond a reasonable doubt. Petitioner's objection is not well taken.

      13.    <u>Petitioner's Objection to the Recommendation that His Confrontation Clause Rights Were Not Violated by the Testimonial Hearsay Attributed to Ms. Srip.</u>

Petitioner objects to the recommendation that his Confrontation Clause claim be denied. Petitioner argues that the state court's conclusion that his right of confrontation under *Crawford v. Washington*, 541 U.S. 36 (2004) was not violated was contrary to, or an unreasonable application of clearly established federal law. 28 U.S.C. §2254(d)(1). At trial, Ms. Srip was called as a witness by the state. She testified that Kray never assaulted her and denied that he threatened to shoot out her tires if she went to work. She also denied that she was afraid of him or that she told security at Emerald Downs that she was afraid to return home. She was cross-examined by the defense. In response to her denials, the state called two witnesses, Sa Lan and Song Suoing, who testified that Kray pointed his rifle at Ms. Srip's tires and threatened to shoot them if she left for work, and that Kray attempted to stop her from leaving by threatening her with the rifle. Other law enforcement and security officers also testified about the assaults.

Judge Strombom correctly found that there are no Supreme Court cases holding that Petitioner's Confrontation Clause rights were violated in the circumstances of this case; *i.e.*, when Ms. Srip testified at the trial and was cross-examined but was hostile to the state. Therefore, by definition, the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law. The objection is not well taken.

      14.    <u>Petitioner's Objection to the Recommendation the Petitioner Waived the Claim that the Tapes Replayed to the Jury Outside His and Counsel's Presence Violated the Sixth and Fourteenth Amendments.</u>

Petitioner objects to the recommendation that he waived his claim that his Sixth and Fourteenth Amendment rights were violated when the jury replayed tapes during deliberation and outside his and

ORDER
Page - 11

counsel's presence and allegedly heard material not presented at trial. Petitioner argues that this Court cannot find that the claimed error was waived absent an analysis of the state waiver rule, citing *Powell v. Lambert*, 357 F.3d 871, 872 (9th Cir. 2004). He also argues that he may raise this issue for the first time on appeal or in post conviction proceedings.

In *Powell v. Lambert*, the Ninth Circuit analyzed the effect of procedural bar rules to exhausted and unexhausted claims and held that a habeas court must analyze both published and unpublished opinions of the state courts to determine if the bar on mixed petitions was "clear, consistently applied and well established at the time of [his] purported default." *Id.*, citing *Wells v. Maars*, 28 F.3d 1005, 1010 (9th Cir. 1994). The Ninth Circuit remanded the matter to the district court to consider the exhausted claims. Here, it is not disputed that petitioner <u>exhausted</u> his claim. The question is whether the state courts properly applied the invited error doctrine and found the claim to be waived.

In Washington, the invited error doctrine "prohibits a party from setting up an error at trial and then complaining of it on appeal." *In re Personal Restraint of Breedlove*, 979 P.2d 417, 426 (1999). The Court of Appeals held that Petitioner invited the error where he provided unredacted copies of the tapes and failed to provide redacted copies of the tapes or transcripts. It therefore held that he "waived his right to complain." *Kray*, 2002 WL 31732682*16. The court further held that because the trial court requested that Petitioner make a post trial motion for a hearing on what transpired during the replay of the tapes during deliberation and because Petitioner did not make the motion, "he waived this claim of error." *Id.* at *17.

The Report recommends that this Court deny this claim for the reasons set forth by the Washington Court of Appeals. Because the state court's adjudication of this claim is not contrary to, or an unreasonable application of federal law, the objection is not well taken.

15. <u>Petitioner's Request for Appointment of Counsel</u>.

Because the Court finds that an evidentiary hearing is not necessary, Petitioner's request for appointment of counsel is **DENIED**.

## IV. ORDER

(1) The Court adopts the Report and Recommendation to the extent it is not inconsistent with this Order;

(2) Petitioner's application for a writ of habeas corpus [Dkt. #1] is **DENIED** and this action is **DISMISSED WITH PREJUDICE**;

(3) The Court hereby issues a certificate of appealability as to all issues raised in the Petition, 28 U.S.C. §2253(c)(2); and

(4) The Clerk is directed to send copies of this Order to all parties and to the Honorable Karen L. Strombom.

**IT IS SO ORDERED**.

Dated this 1st day of August, 2008.

/s/ Ronald B. Leighton
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE